[Civ. No. 11426.  Second Appellate District, Division Two.—July 21, 1937.]

CARL ADAMS, Respondent, v. URBAN R. ZIEGLER, as Mayor, etc., Appellant.

Clayton L. Howland for Appellant.

Russell F. Milham for Respondent.

WOOD, J.—The appellant, mayor of the city of Pomona, appeals from a judgment granting a peremptory writ of mandate by which he was ordered to sign warrants in favor of various persons who had rendered services to the city.

In the month of June, 1936, various actors and musicians presented a play in one of the public parks in the city of Pomona. The claims of the various performers ranged from $2 to $25 each, and all of the claims, totaling $230, were assigned to respondent, who filed the petition for the writ. It is now contended by appellant that the authorities of the city of Pomona had no power to engage the services of the claimants and have no right to pay them from the public funds of the city.

The general powers of the city of Pomona are set forth in section 52 of its charter, which provides that it shall have power "to acquire . . . and to establish, maintain, equip, own and operate . . . parks, playgrounds, places of recreation . . . " By section 54 of the charter the city council is given power: "To establish when deemed advisable a civil art commission, a park commission, a playground commission and a commission of public charities and such other commissions as may be deemed advisable, and to appoint commissioners on said commissions, to serve without compensation, with such powers and duties as may be fixed by the council." Pursuant to the powers given by the charter the city council

enacted an ordinance creating a park and playground commission and giving to this commission general supervision and management of playgrounds and parks, including the "proper disbursement of all funds received from any source for park and playground purposes", all subject to the direction and approval of the city council. On May 12, 1936, the city council authorized the park and playground commission to present a summer music and drama program in the public park of the city and approved and set aside the sum of $400 for that purpose. On June 23, 1936, the city council referred to the park and playground commission the question of making a charge for seats in the theater located in the public park for the program to be presented under the auspices of the commission. Thereupon the commission employed the claimants and the play was presented on June 30, 1936. On July 21, 1936, the city council approved and ratified the employment of the claimants, whose demands were thereafter presented and ordered paid by action of the city council, and the auditor was instructed to draw warrants for their payment. The auditor accordingly drew the warrants.

We cannot sustain appellant's contention that the claims did not constitute a legal charge against the city. The charter provisions were sufficiently comprehensive to empower the authorities of the city to present a music and drama program for the recreation of the citizenry. It doubtless was for the general welfare of the community. In *Egan* v. *City of San Francisco*, 165 Cal. 576 [133 Pac. 294, Ann. Cas. 1915A, 754], the court said: "In endeavoring to ascertain whether the arrangement here sought to be consummated is authorized, we need not consider, at any length, the contention of appellant that the construction and conducting of an opera house is not, under any circumstances, a municipal function. Even without relying upon a specific provision of the San Francisco charter, to be mentioned hereafter, we should hesitate to say that the providing of a place for the production of musical performances was not within the proper scope of municipal activities, as now understood. The trend of authority, in more recent years, has been in the direction of permitting municipalities a wider range in undertaking to promote the public welfare or enjoyment."

Appellant argues that the claims are not a legal charge against the city for the reason that a section of the

city charter provides that the city shall not be bound by any contract unless the council shall have first caused notice to be published inviting proposals, and that the contract shall be let to the lowest responsible bidder. There is no merit in this contention. Provisions in city charters as to competitive bidding are not applicable to contracts for personal services depending upon the personal skill or ability of the individual. (McQuillin on Mun. Corp., 2d ed., vol. 3, p. 866.) The present case affords an excellent example of the necessity of omitting the provisions for competitive bidding in contracts for personal services. If an actor or musician should be employed after proposals for competitive bidding the lowest bidder might be financially responsible, but with vocal or histronic ability of a quality to destroy the recreational value of the play. Another answer to the contention may be found in a provision in the charter that the council may by resolution authorize any officer or agent of the city to bind the city for the payment of a sum of money not exceeding $250 without complying with the provisions cited. ■ Appellant further argues that the contracts were not regularly made, since it was the function of the city council rather than the park and playground commission to engage the services of musicians and actors. Regardless of the question of power to make the contracts it is sufficient to say that the contracts were ratified by the council and the city accepted the benefits from them. The making of the contracts being within the powers of the city, and the council having approved the presentation of the play and having ratified the action of the commission, the city is not now in position to deny the validity of the claims. (*Warren Brothers Co.* v. *Boyle,* 42 Cal. App. 246 [183 Pac. 706].)

■ An attack is made upon the finding of the trial court that there are sufficient funds in the hands of the city treasurer to pay the claims. Although it is argued by respondent that this finding is not necessary to support the judgment, an examination of the record discloses sufficient evidence to sustain the finding.

■ It is the final contention of appellant that *mandamus* is not the proper remedy. The claims were approved by the council, which ordered their payment, and were allowed by the auditor. The signature of the mayor to the warrants was a ministerial act. *Mandamus* was the proper remedy to compel him to perform this function. (*Williams* v. *City*

*of Stockton,* 195 Cal. 743 [235 Pac. 986] ; *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432 [73 Pac. 189] ; *Hunt* v. *Broderick,* 104 Cal. 313 [37 Pac. 1040].)

The judgment is affirmed.

Crail, P. J., concurred.

A petition by appellant to have the cause heard in the Superior Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 16, 1937.