[Civ. No. 54611. Second Dist., Div. One. Nov. 26, 1980.]

ELSA M. PAGE, et al., Plaintiffs and Appellants, v.
CITY OF MONTEBELLO et al., Defendants and Respondents.

**COUNSEL**

Einstein, Einstein & Spiegel and Gary Einstein for Plaintiffs and Appellants.

Burke, Williams & Sorensen, J. Robert Flandrick and Mark C. Allen, Jr., for Defendants and Respondents.

OPINION

**HANSON (Thaxton), J.**—Plaintiff Elsa Page, widow of decedent Perry J. Page, individually and as guardian ad litem for Tina Page, minor daughter of decedent, appeals summary judgment for defendants in this action to recover death benefits on the basis of a promise allegedly made to decedent and his spouse by a police officer employed by the City of Montebello.

FACTS

On July 18, 1976, there was a robbery at Now Sound, Inc. (hereinafter referred to as Now Sound), the stereo store in Montebello where Perry Page was employed as manager. Perry Page was abducted, shot and killed by the robber. In the months preceding his death, Page had been working with the Montebello police as an informant and had assisted them in apprehending several suspects engaged in narcotics dealings. His widow was informed that his death was related to his undercover narcotics activities.

Plaintiffs thereafter instituted this action against the City of Montebello (hereinafter referred to as the City), its agents and/or employees named as Does, and the Montebello Police Department (hereinafter referred to as the Department). Their complaint alleges, inter alia, that on or about November of 1975 and January of 1976, Elsa Page and decedent were orally promised by defendants that if anything physical happened to decedent through his work with the Department as an undercover narcotics agent, decedent, or his wife and child, would be compensated as though he were a policeman; that decedent was working as an undercover agent at the time of his death and was killed as a result of these duties; that decedent and plaintiff performed all conditions of this contract, which was made expressly for their benefit; and that the City breached by refusing to perform. In a second cause of action plaintiffs further allege that when defendants made the promise they knew, or should have known, that decedent would be reasonably induced to rely on their promise; that he did so rely in becoming an undercover narcotics agent; that defendants failed to perform and that justice requires that the promise be enforced. In a third cause of action, plaintiffs allege in addition that defendants at the time of making the promise had no intent to perform; that Elsa Page and decedent had no way of knowing this; that decedent performed in reliance on that promise, without which he would not have done such work; that defendants

failed to perform; and that as the result of their fraud plaintiffs were injured. As a result of defendants' breach, Elsa Page alleges she was deprived of "the society, consortium and income of decedent" while Tina Page was deprived of a parent-child relationship and the support of her father; each prays to be awarded the benefits paid to a widow or child, respectively, of a policeman killed while performing his duty or, in the alternative, the sum of $250,000 damages.

Concurrently with the filing of this civil action, plaintiffs filed a claim to recover workers' compensation benefits from both Now Sound and the City alleging that Page's death arose out of and related to the scope of his employment by both employers. The workers' compensation judge on January 31, 1978, following an evidentiary hearing, issued an opinion on decision finding that Page's death arose out of and in the scope of his employment by Now Sound; that the City did not employ Page; and that his widow and daughter were entitled to an award of $55,000 death benefits. Petitions for reconsideration were filed by both parties, and the judge on March 8, 1978, issued a recommendation to the Workers' Compensation Appeals Board (hereinafter referred to as the WCAB) that both petitions be denied.

On April 24, 1978, the WCAB issued its opinion and order granting reconsideration. The WCAB rescinded the earlier award and order, and found that Perry Page, while employed on July 18, 1976, by both Now Sound and the City sustained an injury arising out of and occurring in the course of employment which proximately resulted in his death on that date. In holding both Now Sound and the City responsible, the WCAB relied upon Labor Code section 3366[1] and its earlier decision in *Amend* v. *City of Long Beach* (1965) 30 Cal.Comp.Cases 29. Subsequently the City's petition for reconsideration was granted and the WCAB on July 18, 1978, filed a second opinion affirming and adopting its April 24, 1978, decision. The WCAB quoting from testimony given by an officer at the December 15, 1977, hearing, concluded that Page performed services on request of the Department. The City's petition for writ of review relating to the WCAB decision was subsequently denied by the Court of Appeal (*Page* v. *City of Montebello* (Apr. 29, 1980) 2 Civ. 54309) and the California Supreme Court (June 25, 1980.)

---

[1]Labor Code section 3366 provides: "For the purposes of this division, each person engaged in the performance of active law enforcement service as part of the posse comitatus or power of the county, and each person (other than independent contractor

Meanwhile, on November 14, 1977, their demurrers to the complaint having been overruled, defendants filed in the case at bench a motion for summary judgment. The principal thrust of the motion, which is supported by declarations of the city administrator, the City's employee relations officer, the chief of police, and one of the attorneys for the City, is that because decedent was never an employee of the City, and the City was not aware of any promise made by any employee to decedent, it cannot be held liable for the payment of benefits to the plaintiffs which would be contrary to the public interest. Hearing on the motion was held on March 10, 1978. In the interim plaintiffs filed their opposition to the motion incorporating therein their opposition to defendants' demurrer. The opposition was supported by the declarations of Elsa Page and Gary Einstein, her attorney; attached to Einstein's declaration is the police report relating to the arrest of certain narcotics suspects with which decedent assisted. Plaintiffs also requested the court to take judicial notice of the opinion on decision issued by the workers' compensation judge on January 31, 1978, together with the award and minutes of the hearing. In addition, the court file included the deposition of Elsa Page and responses to interrogatories by both parties.

The material facts disclosed by the record show that Perry Page, through his business at the stereo store where he was employed, sometimes came into contact with individuals who asked him whether he wanted to purchase illegal drugs. Decedent told his wife in November 1975 that he had given this information to Officer McConnell of the Montebello Police Department. Elsa Page expressed concern that decedent or his family might be endangered by this conduct. However, Officer McConnell in a telephone conversation with husband and wife later that month told Mrs. Page not to worry about her husband's activities as an informant because he would not be involved in anything dangerous, and if he was injured "he would be taken care of" and his family would be taken care of.

Subsequently in January 1976 Officer McConnell came to the Page home and repeated to Elsa Page that if anything should happen to her husband, he and his family would be taken care of "as a police officer

or an employee of an independent contractor) engaged in assisting any peace officer in active law enforcement service at the request of such peace officer, is deemed to be an employee of the public entity that he is serving or assisting in the enforcement of the law, and is entitled to receive compensation from such public entity in accordance with the provisions of this division."

and that his family would be taken care of." Elsa Page in her supporting declaration alleges, inter alia, that she knows from discussions with her husband that he would not have placed himself in danger or participated as he did with the Department but for the representations made by Officer McConnell. Thereafter in early June 1976, decedent told his wife that he had been involved with the Department in narcotics activities and that he had "helped set up" the arrests of several individuals on narcotics charges.

The circumstances gleaned from the WCAB opinion and police report disclose that Page agreed to aid the Department in the apprehension of certain persons who were dealing in narcotics. Page was to arrange to meet with the dealer to make a purchase of narcotics and the police, who maintained surveillance, would then arrest the dealer. This plan was effectuated; decedent purchased drugs and upon his signal to police officers that the purchase was completed, those involved were apprehended.

Subsequently on July 18, 1976, while Page was at the stereo store where he was regularly employed, an individual who was later identified as Johnson aka Karnes, entered the premises on the pretext of buying stereo equipment. Johnson/Karnes drew a gun on Page and his coemployee, demanded the money from the cash register, and then told Page and his coemployee to accompany him to Page's car. When he learned the car would hold only two persons, he ordered the coemployee to lock himself inside the store. Johnson/Karnes then departed with Page who was found shot to death at a location near the store later that day.

When Perry Page did not return from work, his wife contacted the Department and was told that her husband was dead. On July 19, 1976, she visited the Department and was told by Officer McConnell and Detective Sertansky that they were investigating the murder and that the death was not connected with Page's activities as an informant. On July 20 these officers told her the suspect had been apprehended. Then on July 24 Officer McConnell told her that her husband's death was related to the work he was doing with them; that the man who killed him was a friend of the people arrested in the drug bust the end of May or early June. It appears that Johnson/Karnes was the roommate of Allen Merry who was arrested as a result of Page's activities; that in the presence of Johnson/Karnes, Merry and others who had been arrested expressed the opinion that Page was an informant; and that Johnson/Karnes offered to kill him for $500 and forgiveness of a debt owed to

Merry. Although Merry reportedly declined the offer, Johnson/Karnes later came to Merry's house, showed him money and a gun, and reported that he had killed Page. After his arrest, Johnson/Karnes pleaded guilty to charges of first degree murder and robbery in relation to the offense.

Defendants conceded, solely for purposes of the summary judgment motion and without admitting the fact, that the promise was made by Officer McConnell, and argued that there could be no liability on their part. The declarations of the city administrator, employee relations officer and chief of police describe the City's employment practices and allege that Perry Page was not employed or considered an applicant for employment by the City at any time. Defendants also pointed out that Elsa Page admitted that no member of the Department other than Officer McConnell promised her anything and that neither that officer nor anyone associated with the City or the Department ever explained the nature of the benefits which the family of a police officer killed or injured in the scope of employment might receive.

The trial court following hearing and consideration of the foregoing records and declarations granted defendants' motion for summary judgment on the grounds therein asserted. Plaintiffs appealed.

## ISSUES

Plaintiffs contend (1) that the trial court erred in granting the motion for summary judgment because triable issues of fact exist as to whether the City is estopped to deny the oral promise of Officer McConnell; and (2) that the trial court abused its discretion in denying plaintiffs' request for the production of certain documents by defendants.

## DISCUSSION

Since for purposes of the motion for summary judgment it was assumed that Officer McConnell made the promise alleged by Elsa Page, the principal issue is whether as a matter of law it can be said that no triable issue of fact exists with respect to the application of the doctrine of estoppel to enforce the alleged agreement against the City.

In general the existence of circumstances justifying application of the equitable doctrine of estoppel is a question of fact. (*State of*

*California* v. *Haslett Co.* (1975) 45 Cal.App.3d 252 [119 Cal.Rptr. 78]; *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) "[T]he question is appropriate for summary judgment however, as well as for a judgment at the pleading stage if, assuming all factual requirements have been met, no estoppel could exist as a matter of law. (See *Pettitt* v. *City of Fresno* (1973) 34 Cal. App.3d 813, 818-819 [ . . . ].)" (*State of California* v. *Haslett Co., supra*, 45 Cal.App.3d 252, 256.) ■ The complaint and declaration of Elsa Page allege that Officer McConnell orally promised that the wife and child of the decedent would receive the same benefits as a police officer killed in the course of his employment and that Page in reliance on that promise undertook the activities briefly described which led to his untimely demise. It is the opinion of this court that as a matter of law the record before this court does not disclose facts which justify the application of the doctrine of estoppel to enforce that promise against the City.

■ It is today well established that in exceptional cases the doctrine of estoppel may be applied against a city, county or state government. "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423].) The question squarely put to this court is whether the balance of interests favors plaintiffs, the survivors of a private citizen killed while pursuing law enforcement activities without remuneration, or the City which represents the public interest and is restrained by legislative controls designed to assure fiscal responsibility and limit discretion in personnel decisions for obvious reasons.

This court is not unmindful of the laudable motivation and public spirit displayed by decedent in performing the services herein described, nor of the suffering inflicted upon his family when he became the victim of criminal retribution. These factors do not, however, vitiate the hazards inherent in establishing a precedent for the application of the doctrine of estoppel in the present case. To compel the City to honor the alleged promise which, if made, was unauthorized and never ratified by the City or any other officials thereof, would be to invite abuse of the authority of the City to contract for personal services and might dis-

courage the use of informants by the Department by exposing the City to potential liability.

Estoppel has been invoked in a few exceptional cases where public policy interests compelled the court to hold the governmental entity to a promise. It is notable, however, that generally it is held that the power of a public officer cannot be expanded by application of this doctrine. A complaint, for example, which alleged that plaintiff accepted an offer of employment by the State Personnel Board on the representations of its employees that he would not be required to serve outside southern California; that he was ordered to serve outside the area and refused; and that his dismissal for that reason was wrongful is subject to general demurrer. (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634 [234 P.2d 981].) The California Supreme Court in *Boren* refused to apply estoppel since "To invoke estoppel in cases like the present would have the effect of granting to the state's agents the power to bind the state merely by representing that they have the power to do so. It is accordingly held that the authority of a public officer cannot be expanded by estoppel. [Citations.]" (*Id.*, at p. 643.)

Plaintiffs, relying upon *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, assert that courts have liberalized the application of equitable estoppel against governmental entities in recent years and argue that the interests of justice require its application in the case at bench. The California Supreme Court in *Mansell* applied the doctrine under the unique circumstances of the case but noted the attendant difficulties in balancing opposing interests. The court therein observed: "It is settled that '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it. (*United States Fid. & Guar. Co.* v. *State Board of Equalization* (1956) 47 Cal.2d 384, 388-389 [...] and cases there collected.)' (*Driscoll* v. *City of Los Angeles, supra,* 67 Cal.2d 297, 306.) (See generally 28 Am.Jur.2d, Estoppel and Waiver, §§ 122-133, pp. 782-802; 31 C.J.S., Estoppel, §§ 138-147, pp. 675-733.) Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .'" (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 829-830 [...], see also cases there cited.) The tension between these twin principles makes up the doctrinal context in which concrete cases are decided." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at p. 493.)

The court recently reiterated that principle, commenting that "*Mansell* made it clear, that although estoppel may be applied against the government when justice and right require it, the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public." (Strong v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

The case at bench illustrates the dilemma presented to the court when it is required to resolve the tensions existing between these competing principles: On the one hand is the principle favoring avoidance of manifest injustice, while on the other is that seeking to preserve the public interest in control over its elected representatives and their employees. We conclude that since the ultimate power to hire and compensate employees or independent contractors is a discretionary function of government, vested by statute in the legislative body of the City (Gov. Code, § 36506), the promise herein alleged, which was made without authorization, approval or ratification by that body, cannot as a matter of law be enforced by plaintiffs by application of equitable estoppel.

In the present case, the measure of the City's authority to act to employ personnel, whether part or full time, temporary or permanent, is circumscribed by statute. The City in the case at bench has adopted a civil service system (Montebello Mun. Code, § 2200 et seq.) pursuant to statutory authority (Gov. Code, § 45000 et seq.). The discretionary power to hire and fire public employees, including police department personnel, is vested in the City council (Gov. Code, § 36506) and this legislative body maintains control over the qualifications, the selection process, and budgetary considerations. Employment procedures are briefly outlined in the declaration of Robert Franz, employee relations officer. He alleges that in the 1976-1977 fiscal year 59 police officer classification positions were budgeted; that after filing application forms applicants take comprehensive examinations, and are interviewed; that positions are filled from the top 5 names on the eligibility list thus evolved; that the prospective appointing authority then submits a "Personal Action Form" so that the employee's name may be entered on the City payroll; and that the City council is required to approve all contracts for service. He further alleges that no application was filed by or on behalf of Page; no personal action form was filed in Page's name; that he did not know of, authorize, sanction or approve any person to make any promise offering any citizen any compensation or benefit in

event such person suffered injury or death while assisting the Department; and that the City entered no service contract with Page.

With respect to retirement and death benefits, the City is a contracting member of Public Employees' Retirement System (PERS) (Gov. Code, § 20000 et seq.) which limits benefits to those persons who are full-time salaried employees of a public agency. Although a police officer's family may receive death benefits measured by a percentage of his monthly salary, the City must certify to the state board the fact of eligible employment (Gov. Code, § 20162) and the state board determines in the final analysis eligibility for benefits (Gov. Code, § 20124). Robert Franz alleges that he administers the PERS contract: that no contributions were made for Page or plaintiffs; and that Page was never a participating employee of the City or PERS. It is obvious that the foregoing legislative restraints control the City's employment practices, and public employee status is a statutory prerequisite to eligibility for receipt of death or retirement benefits under PERS.

It is established that the unauthorized promise of an employee does not constitute grounds for an estoppel as to the governmental body by which he or she is employed where the means and limitations on its power to act are prescribed by statute. This court has determined that a school district is not estopped by the representations of its employee to deny a contractor's request to delete from its bid a specified subcontractor and to impose a statutory penalty for the contractor's subsequent unauthorized substitution of subcontractors. (*Merco Constr. Engineers, Inc.* v. *Los Angeles Unified Sch. Dist.* (1969) 274 Cal.App.2d 154 [79 Cal.Rptr. 23].) Although this court in *Merco* reversed the order of the trial court sustaining defendant's general demurrer without leave to amend, it rejected arguments advocating the application of estoppel. "Estoppel may be invoked against a governmental agency only when the agency has the power to do that which it promised to do or which it led the opposing party reasonably and justifiably to believe it would do. Where, however, the procedure specified in a statute is the measure of the agency's power to act, estoppel cannot be applied to enlarge that power. [Citation.]" (*Id.*, at p. 160.)

The finding of the WCAB that Page's death was the proximate result of his employment by the City, as well as Now Sound, does not constitute a sound basis for expanding the application of estoppel. That decision was based on a specific statutory provision (Lab. Code, § 3366) which is limited in application to workers' compensation bene-

fits. The authority of the City to determine employment status or award death/retirement benefits is, however, limited by different legislative controls. The claim of plaintiffs is founded upon the alleged promise of Officer McConnell which, as we have determined, is insufficient standing alone to bind the City or entitle plaintiffs to the full panoply of benefits accorded the family of a regularly employed police officer who is killed in the line of duty.[2]

The case of *Adams* v. *Ziegler* (1937) 22 Cal.App.2d 135 [70 P.2d 537], relied on by plaintiffs does not compel a contrary conclusion although it was there held that the City of Pomona was required to pay certain actors and musicians employed by the park and playground commission to present a play in a public park. The case is clearly distinguishable since the facts show the city council approved and ratified the employment of the claimants and instructed the auditor to draw warrants for their payment. The appellate court affirmed the writ of mandate compelling the mayor to sign the warrants.

■ In view of the fact that plaintiffs' third cause of action, though framed in terms of contract, constitutes in actuality an effort to hold the City responsible for the tort of its employee, Government Code section 818.8 constitutes a complete defense. That section provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

Plaintiffs contend that Government Code section 818.8 does not render the City immune from liability with respect to their third cause of action, attempting to distinguish it as a cause of action which "sounds in a deceitful contract." It is plaintiffs' claim that this cause of action is based on deceit, e.g., "a promise, made without any intention of performing it." (Civ. Code, § 1710, subd. 4.) Plaintiffs argue that the City is protected by section 818.8 only with respect to the first three types of deceit described in Civil Code section 1710 (intentional misrepresentation, negligent misrepresentation and concealment). (*Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401 [123 Cal.Rptr. 669].) In fact section 1710 describes fraud which constitutes the tort of deceit, and the

---

[2]We note that in addition to their claim for workers' compensation benefits, plaintiffs filed an application for aid to victims of violent crimes (Gov. Code, § 13959 et seq.). These constitute the sole and exclusive remedies to which plaintiffs are entitled under the circumstances.

*Schonfeld* holding did not exclude from the ambit of section 818.8 the promise made without intent to perform.

*Schonfeld* was concerned with the liability of an employee as distinct from the liability of the employer, City of Vallejo. The court, with respect to the City, summarized the principles pertaining to the potential liability of the City as follows: "[Appellant] asserts that despite the clear and unambiguous language of Government Code section 818.8 and the cases discussed above, the city itself is liable, apart from the acts of its agents. This contention would make sense if the allegations of the complaint pertained to governmental liability not based on *respondeat superior* but on duties imposed on the entity, such as reasonable diligence in complying with legally proscribed safety standards or the entity's liability as an occupier of land. His allegations in the instant complaint against the city, however, are based on *respondeat superior*, and the liability of the entity for the acts of its employee, the city manager. [Appellant] has not cited, and our research has not disclosed, any case that has either expressly or impliedly, directly or indirectly, questioned or eroded the legislative mandate of section 818.8 as to absolute immunity of the public entity for the negligent or intentional misrepresentations of its employees [citation]. . . ." (*Schonfeld v. City of Vallejo, supra,* 50 Cal.App.3d 401, 419, original italics, fns. omitted.)

No claim is made in the present case that any promise was made by any one associated with the City except Officer McConnell. The only person who could have made a promise without intent to perform is that officer[3] and only if his promise and intention or lack thereof is imputed to the City under respondeat superior could the City be held liable under the third cause of action. The City, however, enjoys absolute immunity under Government Code section 818.8. No contract was ever formed in the absence of knowledge or ratification of the officer's promise by the City.

In summary, the limitations on the authority of the City, together with the absence of knowledge or ratification on its part, preclude the application of equitable estoppel and Government Code section 818.8 further establishes its immunity with respect to misrepresentation by an

---

[3]It appears that Elsa Page does not accuse Officer McConnell of malice or deliberate intent to deceive. In her deposition she replied that she did not believe she was intentionally lied to by that officer.

employee. Since no triable issue of fact appears in the case at bench, summary judgment was proper. (*Butcher* v. *Okmar Oil Co.* (1977) 65 Cal.App.3d 972 [135 Cal.Rptr. 713].)

In view of our conclusion, we do not reach the further question of whether the trial court's denial of plaintiffs' request for production of certain documents by defendants constituted an abuse of discretion.

## DISPOSITION

The judgment is affirmed. Each party shall bear their or its own costs on appeal.

Lillie, Acting P. J., and Title, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 11, 1981.

---

*Assigned by the Chairperson of the Judicial Council.