[Civ. No. 41341. First Dist., Div. Two. Mar. 2, 1978.]

FRANCES MENDOZA, Plaintiff and Respondent, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Appellants.

## COUNSEL

Donald L. Reidhaar, Milton H. Gordon, Aletha R. Titmus, Glenn R. Woods and Fred Takemiya for Defendants and Appellants.

Loren E. McMaster for Plaintiff and Respondent.

Andrew Thomas Sinclair as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

KANE, J.—This is an appeal from the trial court's judgment granting respondent's petition for a peremptory writ of mandate. The background facts may be summarized as follows:

Respondent, Frances Mendoza, was an employee of the University of California (University) at the San Francisco Medical Center. From October 1, 1969, to October 21, 1974, she held a clerical position in the medical records department. On the latter date she was promoted to the

position of hospital pharmacist assistant I. At all times she was a full-time career employee employed for an indefinite term.

Respondent encountered difficulties in her new position. First, she was warned of her work performance, including a written warning dated March 12, 1975. When her work failed to improve, respondent was dismissed by the University on the ground that she failed "to maintain appropriate work performance standards."

From the notice of dismissal which was dated June 13, 1975, and took effect June 30, 1975, respondent initiated a grievance procedure accorded by the staff personnel policy of the University (hereafter Rules). Pursuant to the Rules, respondent was given a full-fledged post-termination hearing on November 4, 1975. After receiving and evaluating the evidence, the University hearing officer recommended to appellant Chancellor Sooy that respondent's dismissal be sustained. On November 25, 1975, respondent was notified that Chancellor Sooy had approved the recommendation of the hearing officer. Respondent appealed from the decision of the chancellor to University President Saxon. On February 12, 1976, President Saxon denied respondent's request for a review and the dismissal thereby became final.

Thereafter, respondent filed a petition for a writ of mandate, praying for back pay from the time of dismissal to the time of final decision. The trial court ruled that because the minimal due process safeguards mandated by law had not been afforded petitioner prior to the University's action in dismissing her, she was entitled to her salary from July 1, 1975 (the date of her termination) to February 12, 1976 (the date of the final decision denying her appeal from the order of dismissal).

As the parties concede, the central issue on appeal is whether respondent was entitled, *prior to her dismissal*, to the minimum procedural safeguards enunciated in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

In *Skelly*, our Supreme Court was called upon to decide the constitutionality of the disciplinary and punitive provisions of the California Civil Service Act (Act) (Gov. Code,[1] § 18000 et seq.). Under the Act, a permanent civil service employee could be dismissed by a

---

[1]Unless otherwise indicated, all references will be made to the California Government Code.

simple notification without according him any meaningful preremoval procedural safeguards (§ 19574). The Supreme Court pointed out that since a permanent civil service employee may be dismissed under the statute only for cause (§ 19500), he has a property right in his continued employment and may be deprived thereof only if, *prior* to his dismissal, certain procedural safeguards are observed. As the court underlined, "As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 215.) Because of the apparent failure to accord the employee any procedural protections to "minimize the risk of error in the initial removal decision" (*Arnett* v. *Kennedy* (1974) 416 U.S. 134, 170 [40 L.Ed.2d 15, 42, 94 S.Ct. 1633]), the provisions of the Act were held violative of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 15, of the California Constitution (*Skelly* v. *State Personnel Bd., supra,* at p. 215).

■ A simple reading of the Rules at bench convinces us that they suffer from almost identical constitutional infirmities as the provisions of the Act challenged in *Skelly*. Thus, it appears that although pursuant to the Rules a permanent, career employee may be dismissed only for cause (Rules, 740.1; see discussion *infra*), there is no provision that such employee be given a copy of the charges and materials upon which the disciplinary action is based or be accorded the right to respond to the charges either orally or in writing prior to his removal (Rules, 740.2, 740.3, 740.4);[2] and, as the parties agree, respondent was not granted these rights either. All that is secured to the employee is a post-termination hearing and the potential remedy of reinstatement and compensation for lost wages if after the post-termination hearing the

---

[2]At all relevant times the pertinent provisions of the Rules read as follows:

"740.3 *Warning to Employee* [¶] Dismissal shall be preceded by at least one written warning unless the offense is sufficiently serious to warrant immediate dismissal. Prior written warning is not necessary in those situations in which an employee knows or reasonably should have known that the performance or conduct was sufficiently deficient or unsatisfactory to warrant dismissal."

"740.4 *Written Notice of Dismissal* [¶] An employee shall be given written notice of dismissal which shall specify the effective date of dismissal; the reason therefore; and notification of right to appeal, if any. Unless an offense warrants immediate dismissal, 15 calendar days' notice shall be given. Any misconduct or failure to maintain appropriate work performance standards by the employee during the notice period may result in immediate dismissal."

initial discharge is found to have been unjustified or wrongful (cf. Rules, 280.7(h)).

Thus, for all intents and purposes, the case at bench falls within the rationale and holding of *Skelly*. It follows that, due to the lack of minimum preremoval safeguards, respondent's dismissal prior to the final decision of February 12, 1976, must be deemed null and void. Since this constitutional infirmity is not corrected until the employee has been given the opportunity to present his arguments to the authority initially imposing the discipline, as a measure of damages the employee is entitled to back pay accrued between the date of discharge and the final decision of the authority (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 403 [134 Cal.Rptr. 206, 556 P.2d 306]).

█ Appellants nonetheless insist that *Skelly* should be held inapplicable in the instant case. In essence, appellants argue: that *Skelly* addressed and determined only the narrow issue of the constitutionality of the Act, hence its holding should be limited to permanent civil service employees serving under that Act; that nonacademic University workers employed for an indefinite term belong to an entirely different category; that these employees, unlike tenured faculty members who may be terminated only for cause (Rules, 103.3, 103.9), serve at the will of the employer and therefore do not possess any property interest in their continued employment (*Arnett* v. *Kennedy, supra,* 416 U.S. 134; *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701]; *Perry* v. *Sindermann* (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694]). Thus, appellants conclude that such employees may be dismissed without cause and without due process safeguards in the absence of alleged First Amendment violations (*Bishop* v. *Wood* (1976) 426 U.S. 341 [48 L.Ed.2d 684, 96 S.Ct. 2074]; *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771 [97 Cal.Rptr. 657, 489 P.2d 537]; *Arroyo* v. *Regents of University of California* (1975) 48 Cal.App.3d 793 [121 Cal.Rptr. 918]; *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219 [108 Cal.Rptr. 251]; *Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854 [72 Cal.Rptr. 756]). Appellants' contentions are predicated on an obvious misconception of law.

At the very outset, we emphasize that the crucial determination whether an employee should be accorded the minimum due process safeguards prior to discharge ought not, and does not, turn on the eventuality that he is employed in the civil service system or works for an

educational institution and/or on the fortuitous circumstance that the educational institution has a tenure system whereby a certain class of employees enjoys special rights and privileges separate and distinct from the other classes of employees. *The overriding consideration rather is whether the employee has a constitutionally protected property interest in his continued employment.*

As appellants concede, in order to resolve this crucial issue, we must look to the nature of the interest at stake and pay special attention to the rules and the tacit understandings of the parties. ■ Indeed, as the cases point out, property interests which are subject to procedural safeguards are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and which support claims of entitlement to those benefits (*Board of Regents* v. *Roth, supra,* 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561]; *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 207; *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 452 [129 Cal.Rptr. 216]). As the United States Supreme Court put it, " 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, *'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'* [Citations.] *A person's interest in a benefit is a 'property' interest* for due process purposes *if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit. . . ."* (*Perry* v. *Sindermann, supra,* 408 U.S. at p. 601 [33 L.Ed.2d at p. 580]; italics added.)

■ When examined in light of the foregoing principles, the Rules adopted by the University abundantly support the proposition that the nonacademic career university workers employed for an indefinite term were intended to and in fact did acquire a property interest in their continued employment and as a consequence were protected by the pretermination procedural safeguards. First of all, the Rules draw a definite distinction between career employees and casual or probationary employees (Rules, 110.5, 110.12), and invest the career employees with a panoply of post-termination remedies, including rights to initiate a grievance procedure, to be heard, and to be reinstated with back pay if the post-termination hearing proves that the dismissal was wrongful (Rules, 280 et seq.).

Secondly, and even more importantly, Rules, 740.1, provided at all relevant times that "Employees who are separated from employment by management action because of misconduct or failure to maintain appropriate work performance standards are considered to be dismissed." Appellants' argument notwithstanding, the clear thrust of this rule is that the career employee employed for an indefinite term may be dismissed from his employment only in case of misconduct and/or poor, inadequate work performance, i.e., for cause. ■ It is, of course, widely recognized that if the employee is subject to discharge only for cause, he has a property interest which is entitled to constitutional protection (*Arnett* v. *Kennedy, supra*, 416 U.S. 134). As the court stated in *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d at page 207, an employee establishing existence of rules and understandings, promulgated by the officials that justify his legitimate claim of entitlement to continued employment absent sufficient cause, has a property interest in such continued employment within the purview of the due process clause (see also *Perry* v. *Sindermann, supra*, 408 U.S. at pp. 602-603 [33 L.Ed.2d at pp. 580-581]).

■ In short, respondent here successfully completed her probationary period and achieved the status of a career employee. Under the Rules adopted and promulgated by the University, respondent could reasonably expect that she could retain her status indefinitely unless and until she committed misconduct or failed to provide adequate services. Under the law, she had more than a mere unilateral expectation as to her continued employment; in point of fact she had a legitimate claim of entitlement to it. While the University was under no duty to confer such right upon the class of employees of which respondent was a member, once conferred, such right could not be taken away from the employees without the appropriate pre-removal safeguards (*Arnett* v. *Kennedy, supra*, 416 U.S. at pp. 166-167 [40 L.Ed.2d at pp. 40-41]; *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d at p. 212).

We entertain no doubt that the cases relied upon by appellants are clearly distinguishable and have no controlling effect on the present case. *Bogacki* v. *Board of Supervisors, supra*, 5 Cal.3d 771, involved a situation where the public employee served at the pleasure of the employer and for that reason he was clearly dismissable without cause and procedural safeguards. *Bishop* v. *Wood, supra*, 426 U.S. 341, likewise failed to overrule or alter the basic principles set out in *Board of Regents* v. *Roth, supra*, 408 U.S. 564, *Perry* v. *Sindermann, supra*, 408 U.S. 593, and *Arnett.*

It simply adopted the interpretation of the state court that under the pertinent ordinance the former policeman was dischargeable at the will of the city. Consequently, the dismissed employee was unable to establish the requisite property interest in his continued employment in order to invoke the due process protection. *Arroyo* v. *Regents of University of California, supra,* 48 Cal.App.3d 793, and *Ishimatsu* v. *Regents of University of California, supra,* 266 Cal.App.2d 854, were decided prior to *Skelly,* and have little relevance, if any, to the post-*Skelly* state law and to the main issue raised in the case at bench.

We observe in passing that, despite their vigorous advocacy that *Skelly* is not (and should not be made) applicable to nontenured university employees, appellants revised and amended the Rules, effective November 1, 1976, so as to provide nonacademic career employees the same basic preremoval procedural rights as prescribed in *Skelly* (Rules, 740.5, 740.6).[3] The significance of the 1976 revision and amendment of the Rules is at least twofold. One, it is tantamount to an admission by appellants that *Skelly* is applicable to the dismissal of those nonacademic university employees who gained regular or career status and who may be dismissed from their employment only for misconduct and/or failure to perform adequately (Rules, 740.1).[4] Two, a potential holding that respondent was not entitled to the minimum preremoval procedural safeguards laid down in *Skelly* would openly contravene the basic tenet that as a general rule a constitutional decision of a court of supreme

[3]The amended Rules, of which we take judicial notice (Evid. Code, § 452; *California State Employees' Assn.* v. *Flournoy, supra,* 32 Cal.App.3d 219, 233 fn. 10), provide in part as follows:

"740.5 *Written Notice of Intention to Dismiss* [¶] A written notice shall be given to a *regular status employee* of intention to dismiss. *The notice shall (1) state the reason for the intended dismissal; (2) include a copy of the charges and materials upon which the intention to dismiss is based; and (3) state that the employee has the right to respond either orally or in writing within five calendar days.*" (Italics added.)

"740.6 *Written Notice of Dismissal* [¶] After the employee's response or five calendar days from the date of notice of intention to dismiss, whichever is sooner, the employee shall be notified in writing of the decision. If it is determined that dismissal is appropriate, an employee shall be given advance written notice of dismissal. The effective date shall be at least ten days from date of issuance of notice of dismissal or fifteen days from issuance of notice of intention to dismiss, whichever is later."

[4]Amended Rules, 740.1, which further clarifies that a regular employee may be dismissed only for unsatisfactory performance or misconduct, reads as follows: "Regular status employees who are separated from employment by management action because of misconduct or failure to maintain appropriate work performance standards are considered to be dismissed. Normally, dismissal is preceded by corrective action (see Section 270) unless unsatisfactory performance or misconduct is so serious as to warrant immediate dismissal."

jurisdiction must be given retroactive effect (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680]; *In re McNeer* (1959) 173 Cal.App.2d 530, 533 [343 P.2d 304]), and would also raise serious equal protection questions under both the federal and state Constitutions.

■ Appellants' subsidiary argument that mandamus is not a proper procedure for reviewing the University's disciplinary decision may be briefly disposed of. It is clear that appellants exercise adjudicatory powers derived directly from the California Constitution (*Arroyo* v. *Regents of University of California, supra,* 48 Cal.App.3d 793; *Goldberg* v. *Regents of the University of California* (1967) 248 Cal.App.2d 867 [57 Cal.Rptr. 463]). It is well settled that in such instances administrative mandamus (Code Civ. Proc., § 1094.5) is a proper means to review the University's decision (*Ishimatsu* v. *Regents of University of California, supra,* 266 Cal.App.2d 854, 862).

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 31, 1978, and appellants' petition for a hearing by the Supreme Court was denied April 27, 1978. Newman, J., did not participate therein.