[Civ. No. 24535. Fourth Dist., Div. One. Sept. 16, 1982.]

RUTH WALKER, Plaintiff and Appellant, v.
NORTHERN SAN DIEGO COUNTY HOSPITAL DISTRICT
et al., Defendants and Respondents.

COUNSEL

Larabee & Loadman and Dale R. Larabee for Plaintiff and Appellant.

Carlo Coppo, Martha L. McGill and Frederick J. Lower, Jr., for Defendants and Respondents.

OPINION

**STANIFORTH, J.**—Defendant Palomar Memorial Hospital (Palomar) summarily fired plaintiff Ruth Walker from her position as head nurse on October 19, 1978. Walker brought this action, charging she was wrongfully discharged without cause and without a pretermination hearing. The case was tried before a jury and after both sides rested, the court granted a defense motion for nonsuit as to the individual defendants. The court then found as a matter of law that Palomar did not need cause to fire Walker and granted Palomar's motion for a directed verdict in favor of the remaining defendants. The jurors, questioning the court's factual base for such direction, refused to sign the verdict form as ordered. Faced with this refusal, the court itself entered judgment for the defendants.

FACTS

Palomar is a district hospital in northern San Diego County formed pursuant to local hospital district law. (Health & Saf. Code, § 32000 et seq.) Palomar is authorized by statute to: employ such employees as the board of directors deems necessary to properly carry on the business of the district; prescribe the duties and powers of all employees; determine the number of employees and to fix their compensation; and to do all other acts and things necessary to carry on the provisions of the local hospital district law. This authorization includes firing employees, including registered nurses who hold their position "at the pleasure of the boards." (Health & Saf. Code, § 32121, subds. (g), (h), (k).)

Walker was employed by Palomar in 1956 as a registered nurse. Before she was hired as a regular employee in 1956, she was a probation-

ary employee. She worked continuously for 13 years, until 1969. She took a leave of absence in 1969 for health reasons and returned as a part-time employee in 1972. She was once again hired by Palomar in July 1976 as a full time, permanent employee. In November 1976 she was promoted to head nurse of Palomar's central supply section.

DISCUSSION

I

Much of the evidence presented to the jury concerned the issue of "cause" for Walker's termination. Palomar contended there was cause to fire her and Walker presented evidence she was fired without hearing or an opportunity to challenge whether cause did in fact exist.

■ We need not examine the details of whether there is a factual showing of cause for here the trial court erroneously directed a jury verdict assuming it was the court's function to determine the factual question of cause. The trial court judge decided this question solely as a matter of fact. The court said in connection with the argument on the motion for directed verdict:

"I've reached a factual conclusion, no doubt about it.

"MR. LARABEE: You are saying as a matter of law?

"THE COURT: No, I'm saying as a matter of weight of the evidence. There isn't any doubt in my mind it was for cause. I'm not saying a matter of law. *I'm saying as a [trier] of fact.*" (Italics added.)

In so stating, the trial court demonstrated a gross misunderstanding of its function on a motion for directed verdict. The rule is stated in *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]: "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] *Unless it can be said as a matter of law . . . no other reasonable*

*conclusion is legally deducible from the evidence ... the trial court is not justified in taking the case from the jury.*" (Italics added; see also 4 Witkin, Cal. Procedure (1981 supp.) § 353; accord, *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360].)

And it was said in *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App. 3d 311, 315 [171 Cal.Rptr. 917]: "Under established principles, a non-suit may be granted "'only where, disregarding conflicting evidence on behalf of the defendants and giving to plaintiffs' evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.'" (*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729, 733 ...; *Dailey* v. *Los Angeles Unified Sch. Dist.,* (1970) 2 Cal.3d 741, 745 ....)"

Walker presented evidence from which it is legitimate to infer Palomar did not have "cause" to fire her. On motion for a directed verdict the trial court must disregard Palomar's conflicting evidence. The trial court could not usurp the jury's function by resolving this evidentiary conflict as a matter of fact.

However, a conclusion of trial court error does not necessarily require reversal if there is a sound basis in law for justifying what otherwise would be a wrongful decision. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 11 [112 Cal.Rptr. 786, 520 P.2d 10].) We therefore examine Palomar's further contentions.

## II

■ Palomar argues irrespective of the trial court's erroneous basis for ordering a directed verdict, it was required to give a directed verdict as a matter of law. Palomar points to Health and Safety Code section 32121, subdivision (h), to support this proposition. The code provides employees of local hospital districts hold their position at the pleasure of the district board of directors. Palomar contends, based on this statute, there is no requirement employees be dismissed only for cause.

*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 783 [97 Cal.Rptr. 657, 489 P.2d 537], is cited for the rule: "A public employee

serving at the pleasure of the appointing authority ... is by the terms of his employment subject to removal without judicially cognizable good cause." The *Bogacki* rule—as applied to public employees—must be viewed in light of the fundamental principle that property interests protected by the due process provision of both the state and federal Constitution may arise from *contract* as well as from the language of a statute. A term of employment set by contract has been recognized as a property right which the state cannot extinguish without conforming to the dictates of procedural due process. (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 601 [33 L.Ed.2d 570, 579-580, 92 S.Ct. 2694]; *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 576 [33 L.Ed.2d 548, 560, 92 S.Ct. 2701]; *Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731 [150 Cal.Rptr. 475, 586 P.2d 956]; *Hostrop* v. *Bd. of Jr. College Dist. No. 515* (7th Cir. 1975) 523 F.2d 569, cert. den. 425 U.S. 963 [48 L.Ed.2d 208, 96 S.Ct. 1748].)

Property interests which are subject to procedural safeguards are created and their dimensions defined by existing rules and understandings that secure benefits and support claims of entitlement to those benefits. (*Roth, supra*, 408 U.S. at p. 577 [33 L.Ed.2d at pp. 560-561]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774].) As stated in *Perry* v. *Sindermann, supra*, 408 U.S. at page 601 [33 L.Ed.2d at p. 580]: "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit. . . . "

*Mendoza* v. *Regents of University of California* (1978) 78 Cal.App. 3d 168 [144 Cal.Rptr. 117], is not directly in point, yet its language offers guidance. Mendoza had successfully completed her probationary period and achieved the status of a career employee. The court said: "Under the Rules adopted and promulgated by the University, respondent could reasonably expect that she could retain her status indefinitely unless and until she committed misconduct or failed to provide adequate services. Under the law, she had more than a mere unilateral expectation as to her continued employment; in point of fact she had a legitimate claim of entitlement to it. While the University was under no duty to confer such right upon the class of employees of which respondent was a member, once conferred, such right could not be taken away from the employees without the appropriate pre-removal safeguards [citations]." (*Id.*, at p. 175.)

Palomar asserts a contract of employment for an indefinite period is terminable at the will of either party unless the parties have expressly or impliedly agreed the employee can be terminated only for good cause and where the contract is based on a consideration independent of the services to be performed by the employee. (*Rabago-Alvarez v. Dart Industries, Inc.* (1976) 55 Cal.App.3d 91, 96 [127 Cal.Rptr. 222]; Lab. Code, § 2922.) Palomar's argument is flawed because it assumes Walker has no express or implied agreement for a pretermination hearing and to be fired only for cause.

Whether Walker was entitled to these two critical employment benefits depends, in part, upon the interpretation of several written documents. When Walker was originally hired, Palomar's employment handbook, given to Walker as part of the employment process, contained a specific employment policy which included the following provision:

"PROBATIONARY PERIOD

"If you are hired on a regular job, your first three months of employment are considered a probationary period. During this time we have a chance to look each other over. After the three month period and before six months a merit evaluation of your work performance will be made by your supervisor. *If it is satisfactory, you will be promoted to 'permanent employee status.'* Upon satisfactory completion of your probationary period and consequent promotion your original date of hire will be used to compute your employee benefits." (Italics added.)

In July 1972, this employment provision was modified to read as follows:

"PROBATIONARY PERIOD

"If you are hired on a regular job your first three months of employment are considered a probationary period. During this time we have a chance to look each other over. After the three month period and before six months an evaluation of your work performance will be made by your supervisor. [omitting: "If it is satisfactory, you will be promoted to 'permanent employee status.'"] Upon satisfactory completion of your probationary period your original date of hire will be used to compute your employee benefits. *If your work performance is not satisfactory*

*during this period, the hospital reserves the right to terminate employment without notice.*"

In March 1978, this representation was again modified, and from that date until Walker's termination read:

"PROBATIONARY PERIOD

"You are hired as a full-time or part-time regular employee for a trial period of ninety days. This probationary time is an adjustment period which will provide you ample opportunity to get acquainted with your associates and to learn the duties of your job. Your supervisor will evaluate your attendance, work performance and attitude to determine if you have the ability to satisfy the job requirements. *If your overall performance is unsatisfactory, the Hospital reserves the right to terminate employment at any time within the probationary period.*

"*If satisfactory, as a full-time employee you will be eligible for all benefits.* They are apportioned to the Group II and Group I designations. *Part-time relief and temporary employees are not eligible for benefits.* (See 'Your Benefits' section for eligibility requirements of each benefit.)" (Italics added.)

These documents clearly constitute the terms of employment for Walker with Palomar. At the time Walker was originally hired, the representation was she would be promoted "to permanent employee status" upon completion of the probationary period. This language was deleted from the July 1972 probationary period declaration. However, in its place Palomar represented "if your work performance is not satisfactory during this period, the hospital reserves the right to terminate employment without notice."

In 1978 the hospital manual was amended to read: "If your overall performance is unsatisfactory, the Hospital reserves the right to terminate employment at any time within the probationary period." This language implies once an employee successfully completes the probationary period, Palomar no longer has an unfettered right to discharge the employee.

The 1978 document further states Walker would be eligible for all "benefits." Included among these benefits is the right to initiate a griev-

ance procedure. Walker was not given a hearing. According to Palomar the grievance procedure is entirely a paper process, meaning nothing.

In the recent case of *Pugh* v. *See's Candies, Inc., supra*, 116 Cal. App.3d 311, a nonsuit was granted where an oral employment agreement was in issue. The *Pugh* court discussed the background of the employment relationships in California, stating in substance: Modern employment practice has modified the common law principle of master and servant. We no longer live in an age where we can presume a paternalistic foundation for employment. (*Id.*, at p. 319.) At pages 321-322, the court said: "Even apart from statute or constitutional protection, however, the employer's right to terminate employees is not absolute. 'The mere fact that a contract is terminable at will does not give the employer the absolute right to terminate it in all cases.' [Citation.] Two relevant limiting principles have developed, one of them based upon public policy and the other upon traditional contract doctrine.... [T]he second when the discharge is contrary to the terms of the agreement, express or implied...."

The court then discusses contract limitations imposed by the parties themselves: "The presumption that an employment contract is intended to be terminable at will is subject, like any presumption, to contrary evidence.... [It] may take the form of an agreement that the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some 'cause' for termination." (*Pugh, supra*, at pp. 324-325; italics added; fns. omitted.) *In short, there had to be "some good reason" to sever the relation. And this obligation on the employer to not fire absent cause or recognizable dissatisfaction subsists, regardless of whether there is any classic "secondary" consideration or not.* (See *Lord* v. *Goldberg* (1889) 81 Cal. 596, 601-602 [22 P. 1126]; see *Rabago-Alvarez* v. *Dart Industries, Inc., supra*, 55 Cal. App.3d 91, 96.) "In determining whether there exists an implied-in-fact promise for some form of continued employment, courts have considered a variety of factors in addition to the existence of independent consideration. These have included, for example, *the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.*" (*Pugh, supra*, 116 Cal.App.3d at p. 327; italics added; fns. omitted.)

Here, as in *Pugh*, *the jury* had the duty to determine the existence or nonexistence of an express or an implied in fact promise for some form of continued employment absent cause for firing. A congeries of factual matters must be examined and resolved in order to determine this question. This assize should include the documents themselves, the provisions regarding the grievance processes, the personnel practices or policies of the employer, the employee's length of service, as well as the practice of the industry in which the employee is engaged. These factual matters are for *the jury* (unless waived), *not the court*, to determine.

Finally, both Palomar and Walker have proceeded with the trial below on the premise that after the probationary period of employment had been completed satisfactorily, termination could only be effected upon unsatisfactory performance, i.e., for cause. In light of the representations made through Palomar's documents and practices, we cannot, nor could the trial court on this record state, as a matter of law, Walker was without right to a hearing or subject to discharge without procedural protection to determine the existence or lack of cause. Whether Walker had a written or oral or an implied in fact agreement for continued employment and termination only for cause are clearly issues of fact. These questions should have been submitted to the jury.

Judgment reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied October 6, 1982, and respondents' petition for a hearing by the Supreme Court was denied December 15, 1982. Mosk, J., and Richardson, J., were of the opinion that the petition should be granted.