Warren D. THOMAS, D.V.M., Plaintiff,

v.

CITY OF LOS ANGELES, a municipality, James Hadaway, individually and as General Manager of the City of Los Angeles Department of Recreation and Parks, Defendant.

No. CV 86–4122 WJR.

United States District Court, C.D. California.

Dec. 22, 1987.

Nathan Goldberg, Allred, Maroko, Goldberg & Ribakoff, Los Angeles, Cal., for plaintiff.

David S. Hotchkiss, Los Angeles, Cal., for defendant.

## MEMORANDUM DECISION

REA, District Judge.

### BACKGROUND

Plaintiff Warren D. Thomas, D.V.M. instituted this action against the City of Los Angeles and James Hadaway, the General Manager of the City of Los Angeles Department of Recreation and Parks. Dr. Thomas alleges that he was wrongfully terminated from his position as Director of the Los Angeles Zoo. The complaint was filed under 42 U.S.C. § 1983 for defendants' alleged violation of plaintiff's due process rights. Dr. Thomas requests both damages and injunctive relief—including reinstatement.

On July 22, 1986 this Court granted a preliminary injunction in Dr. Thomas' favor. Prior to granting the injunction, the Court conducted an evidentiary hearing in order to determine whether there was a likelihood that Dr. Thomas had a property interest in his position as Zoo Director. The Court found that "plaintiff ha[d] shown a probability of success on the merits of his complaint, in that he ha[d] established that he probably had a property interest in his employment at the Zoo, such that he would not be terminated without just cause and a full and fair hearing." Reinstatement of Dr. Thomas as Zoo Director was, however, withheld pending the decision and recommendation of an impartial panel appointed by this Court to aid the Court in determining whether Dr. Thomas was dismissed with "just cause."

After twelve days of hearings, the independent tribunal concluded that there was not just cause to discharge Dr. Thomas. On December 1, 1986 the Court conducted another hearing on whether Thomas should be reinstated in view of the panel's conclusion. The Court found that it would be consistent and in proper accord with its previous grant of a preliminary injunction to reinstate Dr. Thomas as Director of the Los Angeles Zoo.

Following a trial on the merits, the Court took the matter under submission.

### FACTS

In 1974, the Los Angeles City Zoo was without a Zoo Director. After an extensive search, Dr. Thomas was hired as the new director of the zoo effective June 2, 1974. Members of the search committee formed to find a new director represented to Thomas that he was being hired on a permanent basis with the understanding that if he failed to do the job, he could be terminated.

When he was appointed as Zoo Director, Dr. Thomas spoke with Bill Larson, who at that time was the Personnel Officer for the Department of Recreation and Parks for the City of Los Angeles. Larson informed Dr. Thomas that the City needed him to undertake the position as Zoo Director immediately. Plaintiff was therefore initially hired on an emergency basis. Dr. Thomas was told that the City would first hire him as an emergency appointment and then later convert him to an "exempt employee."

When Dr. Thomas inquired as to what it meant to be an "exempt employee," Larson

explained to him that he was being hired outside of the civil service system, that he was not a civil service employee and that he did not have the rights of a civil service employee to go before the Civil Service Commission. Dr. Thomas was, however, told by Mr. Larson that *notwithstanding his exempt status* the City would not terminate him without just cause.

On June 6, 1974, Dr. Thomas signed a form entitled "City of Los Angeles Nomination for Emergency Appointment." This document stated as follows:

> You are being considered for an emergency appointment, since there is no one available on an eligible list. Such an appointment cannot last longer that 240 days. You may be terminated at any time, for any reason, while you are on emergency appointment. An emergency appointment does not make you a regular city employee. Later, if qualified, you may take the examination and receive a regular civil service employment, if your score is high enough.

At the expiration of the 240 days, Dr. Thomas was not given, nor was he asked to sign, any similar document stating that he could be fired without cause as an exempt employee.

On May 2, 1974, Mayor Tom Bradley's office issued a press release announcing the appointment of Dr. Thomas as "Permanent Director of the L.A. Zoo." Dr. Thomas testified that to him this meant that he was hired as the permanent Zoo Director, so long as he did a good job.

During his first several years of employment, Dr. Thomas received regular written performance evaluations by his superiors—all of which were complimentary. After Jerry Lee became plaintiff's supervisor, the evaluations ceased. Dr. Thomas was told that Lee felt that he should not be evaluating someone at Dr. Thomas' level. In 1980, Dr. Thomas was nominated for a Career Service Award. This award is apparently given to outstanding employees who have an admirable record.

In 1982, there was some controversy over Dr. Thomas' handling of certain ivory which had been placed at the zoo for safekeeping. Dr. Thomas was concerned about the impact the ivory incident would have on his employment. To alleviate his concern, Dr. Thomas spoke with Elliott Porter who was then the Assistant Personnel Officer for the Department of Recreation and Parks. Porter regularly gave advice to Dr. Thomas concerning personnel matters, and Dr. Thomas testified that he relied on Porter's advice. It was Porter's responsibility to handle personnel matters that arose at the zoo. Dr. Thomas asked Mr. Porter whether or not he could be fired without cause and what the procedure would be if the Department contemplated firing him. Porter stated that Dr. Thomas would not be fired without a fair hearing and that he would not be fired without just cause.

Porter testified that he told plaintiff that he would not be discharged arbitrarily, capriciously or without a hearing. Dr. Thomas took this to mean that he could not be fired without just cause. In 1982, plaintiff was recruited by the Boston Zoo. Dr. Thomas testified that if Porter had not told him that he could not be fired without just cause, he would have given greater consideration to the Boston offer.

On March 14, 1983 plaintiff was suspended for five working days for his alleged mishandling of a temporary deposit of certain pieces of ivory which were to be stored at the zoo for safekeeping.

John Horan was employed by the Recreation and Parks Department for approximately 35 years. He retired in 1983. He was the General Manager of the Department prior to Mr. James Hadaway being hired in that capacity in May of 1976. Horan was plaintiff's direct supervisor from 1976 to 1981. Horan indicated that during his tenure with the Department, there was a policy of treating all employees, including exempt employees, alike. According to Horan, in the case of exempt employees such as Dr. Thomas, the Department Rules and Regulations required that there be just cause for termination. There was testimony that these policies and procedures were known throughout the upper management of the Department of Recreation and Parks.

Mr. James Hadaway, the current General Manager for the Department of Recreation and Parks, and the individual who fired Dr. Thomas, testified that he felt that exempt employees with the Department of Recreation and Parks could not be fired unless there existed professional management reasons for doing so. Those reasons would be objectively viewed by professional managers as sufficient cause to fire someone.

At the time of plaintiff's discharge, Sheldon Jensen was Dr. Thomas' immediate supervisor. Jensen believed that the City would not arbitrarily or capriciously fire Dr. Thomas, and that the City would need to have just cause in order to justify dismissing Dr. Thomas. Jensen testified that if they were to hire a replacement for Dr. Thomas, they would not tell that person that he or she could be fired without cause. Mr. Jensen stated that the City does not have the right to fire a person in Dr. Thomas' position without cause.

There is no charter provision, ordinance or document within either the City of Los Angeles or the Department of Recreation and Parks which indicates that an exempt employee serves "at will" or at the pleasure of the appointing authority. The City presented no document which defined the employment rights of an exempt employee. In fact, Dr. Thomas, as Zoo Director, had exempt full time employees working for him. Plaintiff testified that the personnel office informed him to treat everyone fairly and that an employee could not be discharged without cause.

On May 30, 1986, Dr. Thomas was advised that there would be an "Administrative Disciplinary Hearing" relating to him on June 3, 1986. The memo concluded that "[f]ollowing the hearing the Department proposes to discharge you." From the testimony presented, this Court finds that Mr. Hadaway had a strong personal dislike for Dr. Thomas, and that he had indicated on a number of occasions his intent to fire plaintiff.

Dr. Thomas requested a continuance of the hearing until after he returned from a planned three week trip to Africa which was to commence on June 4, 1986. Plaintiff claimed that he did not have adequate time to acquire the services of an attorney for advice or to obtain and present witnesses for the June 3 hearing. Plaintiff's request was denied.

At the hearing, plaintiff was unable to produce the witnesses he would have produced had he been given adequate time to secure their appearance. Plaintiff was successful in retaining an attorney for the hearing who renewed the request for a continuance. This request was also denied.

The hearing was presided over by Mr. Hadaway, with Mr. Porter and Mr. Jensen in attendance. At the conclusion of the hearing, Jensen, Dr. Thomas' immediate supervisor, recommended that Dr. Thomas receive a 20-day suspension. Porter recommended dismissal. Mr. Hadaway fired plaintiff from his position as Zoo Director on June 4, 1986. Following the discharge, Mr. Hadaway was quoted in a press release stating that Dr. Thomas "was dismissed from the $73,000.00 post in the aftermath of a disciplinary hearing Tuesday."

After four days of hearings, this Court issued a preliminary injunction finding that Dr. Thomas probably had a property interest in his position as Zoo Director. Furthermore, the City, through the Commission of Recreation and Parks, was ordered to select and convene an impartial tribunal to determine whether the termination of Dr. Thomas was proper. Inasmuch as Dr. Thomas was requesting reinstatement as part of his relief, the Court determined that a hearing conducted by an independent panel would be of considerable assistance to the Court in deciding whether reinstatement would be appropriate.

The Court ordered that Dr. Thomas was to be given adequate notice of the date and time of the hearing in order to enable him to secure witnesses on his behalf. It was ordered that the hearing was to be conducted within thirty days of the date of the order. The Court's intent was to have the tribunal act as a special master to hear evidence and report to the Court its findings, recommendations and conclusions.

The City was allowed the opportunity to add additional charges to those that had

been presented to Dr. Thomas at the June 3 hearing. The Department of Recreation and Parks filed a total of twelve charges against Dr. Thomas. After twelve days of hearings, the tribunal concluded that there was not just cause to discharge Dr. Thomas. Instead, the hearing officers concluded that "the appropriate disciplinary action [was] to suspend Dr. Thomas for twenty (20) days without pay." The evidence presented before this Court, along with the findings of the panel, indicate that Dr. Thomas' accomplishments as Zoo Director have been considerable. The tribunal, however, also found that some of Dr. Thomas' conduct was improper. Nevertheless, the panel concluded that the termination not justified. In its concluding remarks, the tribunal stated:

> Perhaps the one area most in need of improvement at the time is in the area of the relationship between Dr. Thomas and his superiors in the Department, particularly the General Manager. There is no question in our minds that if Dr. Thomas and Mr. Hadaway had established a closer working relationship, the need for this hearing would never have arisen. The simple fact is that Mr. Hadaway neither likes nor trusts Dr. Thomas. It probably is impossible at this point to say why there is a basic, fundamental personality conflict.

> The point is, however, that a personality conflict does not justify discharge. . . .

Subsequent to the issuance of the panel's twenty-seven page findings, Dr. Thomas returned to this Court requesting reinstatement. Following a hearing, this Court ordered Dr. Thomas reinstated.

Thereafter, a five day court trial was concluded on November 19, 1987.

DISCUSSION

1. Was there a property interest?

The United States Supreme Court has noted that property interests do not arise from the Constitution but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitle-ment to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Federal constitutional law, however, "determines whether that interest rises to the level of a 'legitimate claim to entitlement' protected by the Due Process Clause." *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (citations omitted).

In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) the Supreme Court further elaborated on the question of property rights in one's employment. In *Perry,* Robert Sindermann was employed as a college professor by the Texas state college system for a period of ten years. He worked for four of those years at Odessa Junior College under a series of one-year contracts. In 1969, when Sindermann's one year contract expired, the Board of Regents voted not to renew his contract for the next academic year. He was not given a hearing to challenge his non-renewal.

Mr. Sindermann brought an action in Federal District Court alleging that he was not rehired because of his public criticism of the policies of the college administration. The District Court granted summary judgment finding that Sindermann did not have a claim because the junior college had not adopted an official tenure system. The Court of Appeals reversed. Especially pertinent to the instant action was the court's reasoning that despite the lack of a tenure system, the failure of the college to afford the teacher a hearing could violate procedural due process.

On certiorari, the United States Supreme Court affirmed. The Supreme Court, however, pointed out that it disagreed with the Court of Appeals' finding that an employee's subjective expectation in continued employment may be protected by procedural due process. The Court, however, agreed that a party must be given an opportunity to prove the legitimacy of his claim of entitlement in light of the policies and practices of an institution.

The Supreme Court in *Perry* reasoned that the absence of "an explicit contractual

provision may not always foreclose the possibility ... [of] a 'property' interest in re-employment. For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements though not formalized in writing may be implied." *Perry,* 408 U.S. at 601–02, 92 S.Ct. at 2699–2700. The Court noted that a party may be able to show a property interest from the facts and circumstances of his or her case. *Id.* at 602, 92 S.Ct. at 2700.

As stated in the oft quoted language in *Perry:* "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699. The Court ultimately found that under the particular facts and circumstances in *Perry,* Sindermann should have been given the opportunity to prove that he had a *de facto* tenure position with the college and should therefore have been entitled to the same procedures afforded to tenured professors.

This Court, and others, have struggled to interpret what constitutes "a mutually explicit understanding" which would support a party's claim of entitlement to a due process hearing. The Supreme Court in *Perry* emphasized that a mere subjective expectation is *not* enough to create a property interest in one's employment. *Perry,* 408 U.S. at 603, 92 S.Ct. at 2700. However, there is some discord among the courts as to when subjectivity ends and mutual understandings begin. This Court believes that such an analysis is factually oriented and should be determined by the totality of the circumstances and the particular facts of each case.

In *Hadley v. County of Du Page,* 715 F.2d 1238 (7th Cir.1983) a former County Superintendent of Public Works brought a § 1983 action against Du Page County, Illinois and several members of the Du Page County Board. Hadley alleged a violation of his constitutional due process rights based on the Board's failure to provide a hearing either before or after his dismissal. Although a hearing was not provided, the *Hadley* court noted that one was not requested. *Id.* at 1240.

The facts indicate that *Hadley* was a high profile case where there was a widely publicized state criminal investigation against Hadley for his alleged mismanagement of the Public Works Department. The County Board, however, claimed that Hadley's dismissal was not based on the pending criminal investigation. The Seventh Circuit Court of Appeals affirmed the district court's grant of summary judgment.

Hadley claimed that, like the plaintiff in *Perry,* he too had a *de facto* tenure with Du Page County. He argued that he had a property interest deserving of due process protection for the following reasons: 1) he was given verbal assurances by various Board members of job security so long as his performance was satisfactory; 2) Du Pont had an unwritten policy of not firing long-standing employees without a hearing; and 3) he had a reasonable expectation of a due process hearing based on his fourteen years of continuous employment with the County.

The *Hadley* court emphasized that the assurances by Board members could not create a property interest because under Illinois law individual members did not have the authority to bind a county to contracts. *Hadley,* 715 F.2d at 1242 (citations omitted). The court further noted that Hadley had failed to substantiate "in any way" that the County had an unwritten policy of not firing employees without a hearing. *Id.* at 1243. Finally, the court cited the long-standing principle that "[l]ongevity alone does not create a property interest." *Id.* at 1244 (citations omitted).

The present action is distinguishable from *Hadley* in several ways. Generally, Board members act as a unit and their decisions are the result of collective discussions and considerations. Board decisions are usually only effective after a vote or a consensus has been reached. In this case, Dr. Thomas was given representations by high-ranking personnel officers within the specific department that hired him. The

primary role these personnel officers was to inform others, and be informed, of their department's personnel policies.

The City failed to make any convincing argument as to why Dr. Thomas was unreasonable in relying on the representations made by his superiors in the personnel office. There was testimony that most of the advice Dr. received on personnel matters came from the same people who told him that he would not be dismissed on a whim. The City argues that only representations made by Mr. Hadaway could bind the City. However, there is no indication that when Dr. Thomas made inquiries regarding the treatment of his own employees, that he first had to get Mr. Hadaway's approval rather than rely on the advice of the supervisors at the personnel office.

Additionally, in *Hadley*, the superintendent was neither offered nor did he request a hearing. Dr. Thomas was informed that a disciplinary hearing would take place on June 3, 1986. The Court recognizes that affording an employee a hearing may not on its own create a property interest. However, the fact that the City scheduled a hearing certainly corroborates plaintiff's testimony that he was promised a hearing, and that he understood that he would not be dismissed without just cause.

■ Unlike the court in *Hadley*, this Court cannot disregard the representations made to Dr. Thomas. Dr. Thomas' understanding of his employment status was not the result of a unilateral subjective belief, but rather an understanding reached through mutual conversations with persons who seemingly had the authority to make such representations. The City cited no authority which specifically states that supervising personnel officers may not give advice on important personnel matters—especially in the absence of a specific ordinance, statute or document defining the employee's position. Furthermore, although longevity alone may not create a property interest, there is no authority forbidding it as a factor in the analysis.

In *Page v. City of Montebello*, 112 Cal. App.3d 658, 169 Cal.Rptr. 447 (1980) the widow and daughter of decedent Perry J. Page filed an action to recover death benefits due to a promise allegedly made to decedent and his wife by a City of Montebello police officer. Mr. Page was an informant who was never hired by the police department. His widow claimed that the police officer had promised both her and her husband that if anything happened to decedent through his association with the police department he, or his wife and child, would be compensated as though he was a police officer. Mrs. Page was informed that his death was related to his undercover narcotics activities on behalf of the Montebello police department.

The trial court granted summary judgment for defendants. The Court of Appeals affirmed, holding that the alleged promise could not, as a matter of law, be enforced under the doctrine of equitable estoppel. The court emphasized that the promise was made without authorization, approval or ratification by the City or its officials. The court found that it would be "invit[ing] abuse" if it permitted recovery in a case where the City had never approved of any contract nor did it have the decedent's name on its payroll. *Page*, 112 Cal.App. at 666–68, 169 Cal.Rptr. 447.

Using an objective standard, the facts in *Page* are not analogous to the present case. In *Page*, the decedent was never hired by the City, he was not on payroll and he received no benefits. Neither party in the present case could argue that Dr. Thomas was not employed by the City. Rather, the issue at bar is whether through his twelve years as Zoo Director, Dr. Thomas had obtained procedural benefits not generally afforded to exempt employees. Furthermore, this Court is not satisfied that the personnel officials within the Department of Recreation and Parks lacked the authority to advise Dr. Thomas as to his employee status.

In *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir. 1981) Bollow was discharged from his position at the bank after eleven years of employment. Bollow had in his possession a written letter from the bank president wherein he was promised that he would not

be terminated by the bank so long as his work was satisfactory. However, in *Bollow* there was a specific federal statute which governed the dismissal of Federal Reserve Bank employees. *Bollow*, 650 F.2d at 1097. The statute provided that certain bank officers could be "dismissed at [the] pleasure" of the reserve bank. *Id.* at 1097. In light of the specific statutory provision, the court reasoned that the bank president had "clearly overstepped the bounds of his authority...." *Id.* at 1099. The court further emphasized that "[a]ll persons in the United States are chargeable with knowledge of the Statutes-at-Large." *Id.* at 1100.

In *Loehr v. Ventura County Community College*, 743 F.2d 1310 (9th Cir.1984) a community college district supervisor was discharged during his first year of a four-year contract. After new members were elected to the Board of Trustees, there was a vote to request Loehr's resignation. Loehr was handed a letter which stated that if he chose not to resign, the Board "was prepared to undertake all necessary actions to terminate and rescind your contract of employment." *Id.* at 1312.

Subsequently, Loehr was handed another letter which indicated that the Board had decided to afford him procedural due process prior to any actual termination. Loehr was then handed a list of twenty-one instances of his alleged misconduct and he was given the opportunity to respond. In *Loehr*, as in *Bollow supra*, there was a specific statute governing the employee status of a superintendent. The court found that tenure rights of a superintendent were strictly governed by statute and those statutes defined Loehr's rights as being those of a classroom teacher and not of an administrator. *Loehr*, 743 F.2d at 1315, *citing Barthuli v. Board of Trustees*, 19 Cal.3d 717, 139 Cal.Rptr. 627, 566 P.2d 261 (1977). The court therefore found that Loehr did not hold a property interest in his job and the district court's grant of summary judgment was affirmed.

In the instant action there is no specific statute delineating the status of zoo officials. The City failed to provide any document, ordinance or statute which described what it meant to be an exempt employee. Therefore, it cannot be said that the representations made to Dr. Thomas were made in contradiction to express statutory law. Although Dr. Thomas was considered an exempt employee, there was no statute forbidding the City or its representatives to provide added job security to its employees. In fact, California case law has carved out several exceptions to the general statutory law providing that employees for unspecified terms are employed at the will of their employer. *See* Cal.Labor Code § 2922; *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal. Rptr. 917 (1981); *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980).

The City argues that the long line of California decisions interpreting the exceptions to the general "at-will" status of many employees should not apply to this case. The City relies on *Williams v. Department of Water and Power*, 130 Cal. App.3d 677, 181 Cal.Rptr. 868 (1982) where a part-time Los Angeles City employee was terminated for excessive absenteeism. In *Williams*, the plaintiff was not offered a hearing nor were there any representations of continued employment. The *Williams* court distinguished several *private* sector employment cases and held them inapplicable in a *public* employment context. *Williams*, 130 Cal.App. at 683–84, 181 Cal. Rptr. 868.

This Court does not find the public versus private distinction persuasive. In the same year *Williams* was decided, the California Court of Appeals also decided *Walker v. Northern San Diego Hospital District*, 135 Cal.App.3d 896, 185 Cal.Rptr. 617 (1982). In *Walker*, plaintiff was a head nurse who was discharged without a hearing. The hospital had written policies which provided certain employees with a grievance hearing. The court ruled that whether a public employee possessed a property interest should be resolved by analyzing whether the employee would have had a right to continued employment ab-

sent good cause for a dismissal. The court looked to California common law, which included cases covering private employment. The trial court was reversed for granting a directed verdict, and the matter was remanded for a determination as to whether Walker had a written or implied-in-fact agreement for continued employment and termination only for cause. *Walker*, 135 Cal.App.3d at 905, 185 Cal. Rptr. 617.

This Court recognizes that if there is a specific statute governing public employment and the term of an employee's position, the express statutory provision should govern. However, if an employee is provided with no guidance, other than representations made by his superiors, a court is left with the task of interpreting the existing case law governing employment relations. In such a case, whether the employee was employed by the public or private sector should not be the determinative factor.

In *Beckwith v. Clark County*, 827 F.2d 595 (9th Cir.1987) the appellant served as a bailiff in the state and federal courts. When he transferred from state to federal employment there was some dispute as to his status as a public servant. The Ninth Circuit reasoned that "[t]he Supreme Court has recognized that a government employee is entitled to due process when the employee has a property interest in a benefit, such as continued employment, *despite the lack of tenure or formal contract.*" *Id.* at 596 (emphasis added), *citing Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

*Beckwith* involved a case where the plaintiff had once held a civil service status and was then divested of that status upon transferring to a new court. Nevertheless, the Ninth Circuit reversed the district court's grant of summary judgment finding that material issues of fact needed to be considered. These issues included: 1) Beckwith's length of employment with the County; 2) his commendations in his employment; 3) the representations which were made to him upon transferring courts (he was told that he would not lose his civil service status). *See also Merritt v. Mackey*, 827 F.2d 1368 (9th Cir.1987).

The California Court of Appeal in *Mendoza v. Regents of the University of California*, 78 Cal.App.3d 168, 144 Cal.Rptr. 117 (1978) held that an employee had acquired a property interest in her employment despite the fact that she was employed for an indefinite period. Because she had acquired a property interest, she was protected by certain procedural safeguards. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The court reached its conclusion after evaluating the defendant's employment policies.

The Board of Regents argued that due process protection should be limited to permanent civil service employees. *Citing Skelly v. State Personnel Board*, 15 Cal.3d 194, 124 Cal.Rptr. 14, 539 P.2d 774 (1975). The defendant urged that nonacademic University workers employed for an indefinite term belonged in a different category from tenured faculty members who may be dismissed only for cause. According to the Board, non-tenured employees, or employees for an unspecified term, could invariably be dismissed without cause and without due process safeguards. *Mendoza*, 78 Cal.App.3d at 173, 144 Cal.Rptr. 117.

The Court of Appeals disagreed:

At the very outset, we emphasize that the crucial determination whether an employee should be accorded the minimum due process safeguards prior to discharge ought not, and does not, turn on the eventuality that he is employed in the civil service system or works for an educational institution and/or on the fortuitous circumstance that the educational institution has a tenure system whereby a certain class of employees enjoys special rights and privileges separate and distinct from the other classes of employees. *The overriding consideration rather is whether the employee has a constitutionally protected property interest in his continued employment.*

*Mendoza*, 78 Cal.App.3d at 174, 144 Cal. Rptr. 117 (emphasis in original).

As previously stated, in *Roth supra* the Supreme Court found that property inter-

ests "are defined by existing rules or understandings that stem from an independent source *such as state law*—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). Again, absent a specific statute or ordinance specifying what it means to be an exempt employee, especially in such a high-ranking position as Dr. Thomas held, a court should be able to look upon the state law for guidance.

The court in *Walker, supra,* considered the fact that when Walker was originally hired she was given the status of a probationary employee. The hospital represented that if her work performance was not satisfactory during the probationary period, the hospital reserved the right to terminate her employment *without notice.* The court held that the language implied that once an employee successfully completed the probationary period, the hospital no longer had the unfettered right to discharge the employee. *Walker,* 135 Cal. App. at 903, 185 Cal.Rptr. 617.

Similarly, in the present case Dr. Thomas was initially placed as an "emergency" appointee. A document was provided to Dr. Thomas which stated that for 240 days he could "be terminated at any time, for any reason...." Once the 240 days ran, Dr. Thomas was not given any *new* documents explaining his status as an exempt employee. Instead, all he had to rely upon were the representations made by officials within the Department who told him that he would be given a hearing and that he would not be dismissed without justification.

The *Walker* court also relied on *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 117 Cal.Rptr. 109 (1981). In *Pugh,* the court emphasized that "[t]he presumption that an employment contract is intended to be terminable at will is subject, like any presumption, to contrary evidence.... [It] may take the form of an agreement that the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employees's services or the existence of some 'cause' for termination." *Pugh,* 116 Cal.App.3d at 324–25, 171 Cal. Rptr. 917.

The *Pugh* court went on:

In determining whether there exists an implied-in-fact promise for some form of continued employment, courts have considered a variety of factors in addition to the existence of independent consideration. These have included, for example, the personnel policies or practices of the employer, the employees longevity of service, actions or communications by the employer reflecting assurances of continued employment and the practices of the industry in which the employee is engaged.

*Pugh,* 116 Cal.App. at 327, 171 Cal.Rptr. 917.

Dr. Thomas had been employed as Director of the Los Angeles Zoo for twelve years. Representations were made to him that he would be a "permanent" employee so long as he performed satisfactorily. He was promised a hearing in the event the Department wanted to dismiss him. At least some Department officials advised him that he would not be dismissed without just cause. Through court testimony it became apparent that the City followed a policy of telling their full-time exempt employees that they would not be dismissed without good reason.

Dr. Thomas had received commendations and promotions from the City. He was nominated for a career service award. If the defendants wanted to enforce Dr. Thomas' exempt status, they could have provided him with an express agreement describing his employment and the lack of any job security. The City could also adopt an ordinance identifying the zoo directorship as an at will position. Because the Court has no express statutory or written agreement to follow, it must evaluate this case under the totality of the circumstances surrounding the discharge of Dr. Thomas.

[2] After conducting extensive pre-trial hearings, a trial and considering the findings of the independent panel, the Court finds that Dr. Thomas obtained a property

interest in his job through mutual understandings between him and his superiors. The Court wishes to emphasize that this is a unique case. The combination of events and representations made, along with the absence of a specific statute, document or ordinance describing Dr. Thomas' position with the zoo, resulted in a violation of plaintiff's due process rights to a fair hearing prior to his termination.

■ This Court now finds that the initial hearing given to plaintiff on June 3, 1986 did not conform to due process standards. Dr. Thomas had inadequate preparation time and there is little doubt that the minds of those involved were already made up. The notice of hearing stated that "following the hearing the Department proposes to discharge you." Further, at an earlier preliminary injunction hearing the defendants stipulated that the hearing conducted immediately prior to Dr. Thomas' termination was inadequate for due process considerations.

■ To aid this Court in determining whether reinstatement for purposes of the preliminary injunction would be proper, the panel appointed by this Court reviewed the circumstances surrounding Dr. Thomas' dismissal. After full and lengthy hearings (at which the City was permitted to add additional charges against Dr. Thomas), the tribunal determined that there was not just cause for Dr. Thomas dismissal.

The hearing conducted by the independent tribunal gave each side the opportunity to develop its arguments and positions regarding Dr. Thomas' performance as Zoo Director. The panel found that Dr. Thomas termination was inappropriate. This Court, in consideration of the evidence adduced and introduced during trial, and the findings, conclusions and recommendations of the panel, finds that reinstatement is appropriate and that Dr. Thomas should continue in his position as Director of the Los Angeles Zoo. Furthermore, because the City employed policies, as described above, which violated plaintiff's constitutional right to due process protection, the City can be held liable under § 1983. *See Monell v. New York Department of Social*

*Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

2. Is Defendant James Hadaway immune from liability?

The defense of qualified immunity shields a government official from liability if his actions are objectively reasonable under the law. *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed. 2d 396 (1982); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1982). In order to determine whether the defense of qualified-immunity applies, a court must reach the threshold question of whether or not the official's action violated clearly established constitutional rights and principles. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

■ This case involves subtle issues of law. It cannot be said that Mr. Hadaway acted in express contradiction to clearly established principles. In closing argument, plaintiff's counsel conceded that Mr. Hadaway's conduct fell under the cloak of qualified immunity up to the point that he issued a press release indicating that Dr. Thomas had been dismissed in the aftermath of a disciplinary hearing. This Court does not find that the issuance of the press release subjects Mr. Hadaway to personal liability for his conduct against Dr. Thomas. The Court therefore finds that the defense of qualified immunity applies to Mr. Hadaway, and that he is shielded from damages liability in this action.

Further, the Court finds that plaintiff has failed to establish by sufficient evidence any entitlement to compensatory damages beyond that of back pay.

CONCLUSION

Accordingly, for the above stated reasons it is HEREBY ORDERED, ADJUDGED AND DECREED that:

1) A permanent injunction be issued restoring Dr. Thomas as Director of the Los Angeles Zoo.

2) The City may not terminate Dr. Thomas in the future without affording him due process of law.

3) Back pay be awarded from June 1, 1986 to December 1, 1986 (minus 20 days based upon the tribunal's recommendation of suspension). The amount of the back pay is to be calculated by the City.

4) The matter of attorney's fees will be determined upon future motion.

IT IS SO ORDERED.